## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUKE GRALIA, KAMILA HARKAVY, SARAH SHERMAN, and CRYSTAL RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>LINDT & SPRÜNGLI (USA), INC.,<br><br>                    Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Luke Gralia, Kamila Harkavy, Sarah Sherman, and Crystal Rodriguez, individually and on behalf of all others similarly situated, allege the following against Defendant Lindt & Sprüngli (USA) Inc., ("Lindt" or "Defendant") on information and belief, except that Plaintiffs' allegations as to their own actions are based on personal knowledge.

## NATURE OF THE ACTION

1.    This action seeks to recover damages and injunctive relief for Defendant's continuing failure to disclose to consumers that certain Lindt dark chocolate products (collectively, the "Products"), contain unsafe levels of lead and cadmium (collectively "Heavy Metals").

2.    The Lindt Dark Chocolate Products in question are the Lindt "Excellence Dark Chocolate 70% Cocoa" bar and the Lindt "Excellence Dark Chocolate 85% Cocoa" bar.

3.    Dark chocolate is often touted as being a healthier alternative to milk chocolate, however, a December 2022 report by Consumer Reports revealed that certain dark chocolate bars, including the Products, had high enough levels of lead and cadmium that "eating just an ounce a

day would put an adult over a level that public health authorities and [Consumer Reports'] experts say may be harmful."[1]

4.     Heavy Metals in foods pose a significant safety risk to consumers because they can cause cancer and often irreversible damage to brain development as well as other serious health problems.

5.     As described more fully below, consumers who purchase the Products are injured by Defendant's acts and omissions concerning the presence (or risk) of Heavy Metals.  No reasonable consumer would know, or have reason to know, that the Products contain (or risk containing) Heavy Metals.  Worse, as companies across the industry have adopted methods to limit heavy metals in their dark chocolates, Defendant has stood idly by with a reckless disregard for its consumers' health and well-being.  As such, Plaintiffs seeks relief in this action individually and as a class action on behalf of all purchasers of the Products.

## PARTIES

*Plaintiffs*

6.     Plaintiff Luke Gralia is a domiciliary of New York, and resides in the city of Brooklyn, New York.  Plaintiff Gralia purchased Lindt Excellence 85% Cocoa Dark Chocolate Bar at a Rite Aid in Queens, New York numerous times during the class period.  Plaintiff Gralia believed he was purchasing quality and safe dark chocolate that did not contain (or risk containing) Heavy Metals.  Had Defendant disclosed on the label that the Products contained (or risked containing) unsafe toxic Heavy Metals, Mr. Gralia would have been aware of that fact and would not have purchased the Products or would have paid less for them.

---

[1] Kevin Loria, *Lead and Cadmium Could be in Your Dark Chocolate*, CONSUMER REPORTS (December 15, 2022), https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/.

7.      Mr. Gralia continues to desire to purchase the Products from Defendant. However, Mr. Gralia is unable to determine if the Products are actually safe. Mr. Gralia understands that the composition of the Products may change over time. But as long as Defendant continues to market its Products as safe, he will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitor's Products. Mr. Gralia is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products marketed, labeled, packaged and sold as safe dark chocolate is, in fact, safe to consume.

8.      Plaintiff Kamila Harkavy is a resident of California, and resides in the city of Sausalito, California. Plaintiff Harkavy has purchased both of Defendant's Products numerous times during the class period. Typically, Plaintiff Harkavy purchases the Products from Grocery Outlet in Sausalito, California. Plaintiff Harkavy believed she was purchasing quality and safe dark chocolate that did not contain (or risk containing) Heavy Metals. Had Defendant disclosed on the label that the Products contained (or risked containing) unsafe toxic Heavy Metals, Ms. Harkavy would have been aware of that fact and would not have purchased the Products or would have paid less for them.

9.      Ms. Harkavy continues to desire to purchase the Products from Defendant. However, Ms. Harkavy is unable to determine if the Products are actually safe. Ms. Harkavy understands that the composition of the Products may change over time. But as long as Defendant continues to market its Products as safe, she will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitor's Products. Ms. Harkavy is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is

compelled to ensure that the Products marketed, labeled, packaged and sold as safe dark chocolate is, in fact, safe to consume.

10.    Plaintiff Sarah Sherman is a resident of California, and resides in the city of Oakland, California.  Plaintiff Sherman has purchased both of Defendant's Products numerous times during the class period.  Typically, Plaintiff Sherman has purchased the Products from Whole Foods, Safeway and other supermarkets in and around Oakland, California.  Plaintiff Sherman believed she was purchasing quality and safe dark chocolate that did not contain (or risk containing) Heavy Metals.  Had Defendant disclosed on the label that the Products contained (or risked containing) unsafe toxic Heavy Metals, Ms. Sherman would have been aware of that fact and would not have purchased the Products or would have paid less for them.

11.    Ms. Sherman continues to desire to purchase the Products from Defendant. However, Ms. Sherman is unable to determine if the Products are actually safe.  Ms. Sherman understands that the composition of the Products may change over time.  But as long as Defendant continues to market its Products as safe, she will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitor's Products.  Ms. Sherman is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products marketed, labeled, packaged and sold as safe dark chocolate is, in fact, safe to consume.

12.    Plaintiff Crystal Rodriguez is a citizen of California, and resides in San Diego County, California.  Ms. Rodriguez regularly purchased the Lindt Excellence Dark Chocolate 85% Cocoa Product during the Class Period, often making her purchases from Whole Foods and Sprouts in San Diego, including at least the Whole Foods at 8825 Villa La Jolla San Diego, California and Sprouts locations at 3015 Clairemont Dr. and 3358 Governor Dr., in San Diego,

California.  Plaintiff Rodriguez believed she was purchasing quality and safe dark chocolate that did not contain (or risk containing) Heavy Metals.  Had Defendant disclosed on the label that the Products contained (or risked containing) unsafe toxic Heavy Metals, Ms. Rodriguez would have been aware of that fact and would not have purchased the Products or would have paid less for them.

13.    Ms. Rodriguez continues to desire to purchase the Products from Defendant. However, Ms. Rodriguez is unable to determine if the Products are actually safe.  Ms. Rodriguez understands that the composition of the Products may change over time.  But as long as Defendant continues to market its Products as safe, she will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitor's Products.  Ms. Rodriguez is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products marketed, labeled, packaged and sold as safe dark chocolate is, in fact, safe to consume.

***Defendant***

14.    Defendant Lindt & Sprüngli (USA), Inc, is a New York corporation with its headquarters in Stratham, New Hampshire.  Defendant manufactures, markets, and sells dark chocolate, including the Products, throughout New York, California, and the United States. During the relevant period, Defendant controlled the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of its Products.  Defendant therefore had complete control over how to label its Products as to their contents.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28

U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed classes; (b) some members of the proposed classes have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate. *See* 28 U.S.C. § 1332(d)(2) and (6).

16.     This Court has personal jurisdiction over Defendant because Defendant is a New York corporation, and conducts significant business in New York such that it has purposefully availed itself of the privilege of doing business in New York.

17.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant transacts significant business within this District, at least one Plaintiffs resides within this District, and a substantial part of the events giving rise to Plaintiffs' claims took place within this District.

## FACTUAL ALLEGATIONS

### A.     Lead and Cadmium Are Toxic

18.     Lead and cadmium are heavy metals.  As described more fully below, the harmful effects of heavy metals are well-documented, particularly on children.  Exposure puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder), type 2 diabetes, and cancer, among other health issues.  Heavy metals also pose risks to adults.  Even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions.  As such, it is important to limit exposure.

19.     "No amount of lead is known to be safe."[2]  Exposure to lead may cause anemia, weakness, and kidney and brain damage.[3]  Lead can affect almost every organ and system in the

---

[2] *See* https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epa-limits-can-still-impact-your-health (last accessed June 22, 2022).

[3] Centers for Disease Control and Prevention, "Health Problems Caused by Lead," *The National Institute for Occupational Safety and Health (NIOSH)*,

body.  Lead accumulates in the body over time, and can lead to health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.  Lead can also cross the fetal barrier during pregnancy, exposing the mother and developing fetus to serious risks, including reduced growth and premature birth.  Lead exposure is also harmful to adults as more than 90 percent of the total body burden of lead is accumulated in the bones, where it is stored.  Lead in bones may be released into the blood, re-exposing organ systems long after the original exposure.[4]

20.    Cadmium is similarly harmful.  "[A]ny cadmium exposure should be avoided."[5] Exposure to cadmium may lead to damage to kidneys, lungs, and bones.[6]  "Even relatively low chronic exposure can cause irreversible renal tubule damage, potentially progressing to glomerular damage and kidney failure" and "bone loss often is seen in concert with these effects."[7]  This metal is also known to cause cancer and targets the body's cardiovascular, renal, gastrointestinal, neurological, reproductive, and respiratory systems.[8]

---

https://www.cdc.gov/niosh/topics/lead/health.html#:~:text=Exposure%20to%20high%20levels%20of,a%20developing%20baby's%20nervous%20system. (last accessed June 22, 2022).

[4] State of New York Department of Health, "Lead Exposure in Adults: A Guide for Health Care Providers," https://www.health.ny.gov/publications/2584.pdf (last accessed June 22, 2022).

[5] M. Nathaniel Mead, "Cadmium Confusion: Do Consumers Need Protection," *Environ Health Perspect*. 2010 Dec; 118(12): A528-A534, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed June 22, 2022).

[6] *See* Agency for Toxic Substances and Disease Registry, "ToxFAQs for Cadmium," Toxic Substances Portal, https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=47&toxid=15 (last accessed June 22, 2022).

[7] Mead, *supra* note 8.

[8] *See* Occupational Safety & Health, "Cadmium," https://www.osha.gov/cadmium (last accessed June 22, 2022).

**B.**    **Defendant's Products Contain Toxic Lead and Cadmium**

21.    In December of 2022, Consumer Reports published a report titled "Lead and Cadmium Could Be in Your Dark Chocolate."  The report detailed the results of Consumer Reports' testing of various dark chocolates for lead and cadmium.  To determine the risk posed by the chocolates in the test, Consumer Reports measured the chocolates with reference to California's maximum allowable dose level (MADL) for lead (0.5 micrograms) and cadmium (4.1 micrograms).

22.    Consumer Reports analyzed 28 different bars.

23.    Consumer Reports determined that "[f]or 23 of the bars, eating just an ounce a day would put an adult over a level that public health authorities and CR's experts say may be harmful for at least one of those heavy metals. Five of the bars were above those levels for both cadmium and lead."[9]

24.    Lindt's "Excellence Dark Chocolate 70% Cocoa" bar was found to have cadmium levels at 116% of the MADL.

25.    Lindt's "Excellence Dark Chocolate 85% Cocoa" bar was found to have lead levels at 166% of the MADL.

26.    With regard to the results, Tunde Akinleye, a food safety researcher at Consumer Reports who led the project, remarked that "the danger is greatest for pregnant people and young children because the metals can cause developmental problems … but there are risks for people of any age" because frequent exposure to lead can lead to nervous system problems, hypertension, immune system suppression, kidney damage, and reproductive issues.[10]

---

[9] Loria, *supra* note 1.

[10] *Id.*

27.     While lead and cadmium can be found in many food sources, the Lindt Products, *on their own*, expose consumers to 48-166% of the MADL for lead in a one ounce serving and 80-116% of the MADL for cadmium in a one ounce serving.[11]

28.     Chocolate is made from the cacao bean, which has two main components: cocoa solids and cocoa butter. Together, these are called cacao or cocoa.

29.     Dark chocolate, rather than milk chocolate, was the subject of these tests because dark chocolate has a higher percentage of cacao, at least 65 percent cacao by weight, which is where the Heavy Metals lurk.

30.     These Heavy Metals have made their way into the cacao in two ways: cadmium is taken up through the soil by the cacao plant as it grows, while lead is found typically on the outer shell of cacao beans *after* they are harvested.

31.     However, this does not mean that lead and cadmium exposure is inevitable when consuming dark chocolate.  As Consumer Reports noted, five of the 28 chocolate bars tested were below the MADL for both cadmium and lead, proving that "it's possible for companies to make products with lower amounts of heavy metals—and for consumers to find safer products that they enjoy."[12]

32.     Instead of adequately testing its Products like its competitors, Defendant chose to ignore the health of the consuming public in pursuit of profit.

---

[11] *Id.*

[12] *Id.*

**C.    The Presence (or Risk) of Toxic Heavy Metals in Defendant's Products Far Exceeds Expectations of Reasonable Consumers**

33.    According to Verified Market Research, the dark chocolate market was valued at $56.09 billion in 2021 and is expected to grow to $114.62 billion by 2030.[13]  Indeed, "[g]rowing health benefits associated with cocoa-rich dark chocolates, rising demand for premium dark chocolates as gifts, players introducing more limited-edition seasonal chocolates, increasing online sales, and expanding marketing initiatives are expected to drive the global Dark Chocolate Market during the forecast period."[14]

34.    What's more, up to 15% of consumers eat dark chocolate on a daily basis.[15]

35.    Given the negative effects of toxic heavy metals (such as lead and cadmium) on child development and adult health, the presence of these substances in dark chocolate is a material fact to reasonable consumers, including Plaintiffss and members of the Class.

36.    This is not the first time that Defendant has been alerted to the fact that its Products contain unsafe levels of cadmium and lead.

37.    In 2014 Defendant's products were tested by a consumer advocacy group and Defendant was informed that its dark chocolate products had dangerously high levels of cadmium and lead, a subject of concern for the group and for consumers at large.

38.    As such, Defendant knows that the presence (or risk) of toxic Heavy Metals in its Products is a material fact to reasonable consumers, including Plaintiffss and the Class members.

---

[13] *Dark Chocolate Market Size and Forecast*, VERIFIED MARKET RESEARCH (May 2022), https://www.verifiedmarketresearch.com/product/global-dark-chocolate-market/#:~:text=Dark%20Chocolate%20Market%20was%20valued,8.28%25%20from%20202022%20to%202030 (last accessed January 03, 2023).

[15] Loria, *supra* Note 1.

39.    Food manufacturers (such as Defendant) hold a position of public trust. Consumers believe that they would not sell products that are contaminated with unsafe levels of heavy metals.

40.    Defendant knew that if the presence (or risk) of toxic Heavy Metals in its Products was disclosed to Plaintiffss and the Class members, then Plaintiffss and the Class members would be unwilling to purchase them or would pay less for them.

41.    In light of Defendant's knowledge that Plaintiffss and the Class members would be unwilling to purchase the Products or would pay less for the Products if they knew that they contained (or risked containing) toxic Heavy Metals, Defendant intentionally and knowingly concealed this fact from Plaintiffs and the Class members and did not disclose the presence (or risk) of these toxic Heavy Metals on the labels of the Products.

42.    Defendant knew or should have known that Plaintiffs and the Class members would rely upon the packages of the Products and intended for them to do so, but failed to disclose the presence (or risk) of Heavy Metals.

43.    Defendant knew or should have known that it owed consumers a duty of care to adequately test for Heavy Metals in the Products, which it failed to do.

44.    Additionally, Defendant knew or should have been aware that a reasonable consumer could consume a one ounce serving of the Product daily, leading to repeated exposure to the Heavy Metals at unsafe levels.

45.    As such, Defendant has a duty to disclose that consumption of the Products could expose consumers to high levels of the toxic Heavy Metals.

46.    Defendant knew or should have known it could control the levels of Heavy Metals in the Products by properly monitoring the ingredients for Heavy Metals and adjusting any cultivation practices to reduce or eliminate the high levels of Heavy Metals.

47.     It is reasonable to assert that Defendant knew or should have known it could control the levels of Heavy Metals in its Products because there are other chocolate manufacturers who have been able to produce dark chocolate with significantly less cadmium and lead than Defendant's Products.

48.     Prior to purchasing the Products, Plaintiffs and the Class members were exposed to, saw, read, and understood Defendant's labels, and relied upon them in purchasing the Products, but Defendant failed to disclose the presence (or risk) of Heavy Metals.

49.     As a result of Defendant's concealment of the fact that the Products contained toxic Heavy Metals, Plaintiffs and the Class members reasonably believed that Defendant's Products were free from substances that would negatively affect children's development as well as their own health.

50.     In reliance upon Defendant's labels that contained omissions, Plaintiffs and the Class members purchased Defendant's Products.

51.     Had Plaintiffs and the Class members known the truth—*i.e.*, that the Products contained (or risked containing) toxic Heavy Metals, rendering them unsafe for consumption by children and adults—they would not have been willing to purchase them or would have paid less for them.

52.     Therefore, as a direct and proximate result of Defendant's omissions concerning the Products, Plaintiffs and the Class members purchased the Products.

53.     Plaintiffs and the Class members were harmed in the form of the monies they paid for the Products which they would not otherwise have paid had they known the truth about the Products.  Since the presence (or risk) of toxic Heavy Metals in the Products renders them unsafe for human consumption, the Products that Plaintiffs and the Class members purchased are worthless or are worth less than Plaintiffs and the Class paid for them.  What's more, there are

other dark chocolate products on the market which contain significantly lower levels of cadmium and lead than Defendant's Products, meaning that there are safer alternatives to Defendant's Products.

54.    The Products' labels are materially deceptive, false and misleading given Defendant's omission about the presence (or risk) of Heavy Metals as described above.

### FED. R. CIV. P. 9(B) ALLEGATIONS

55.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

56.    **WHO**: Defendant made material omissions of fact in its packaging of the Products by omitting the presence (or risk) of significant amounts of unsafe Heavy Metals.

57.    **WHAT**: Defendant's conduct was and continues to be fraudulent and deceptive because it has the effect of deceiving consumers into believing that the Products do not contain (or risk containing) significant amounts of Heavy Metals. Defendant omitted from Plaintiffs and Class members that the Products contain (or risk containing) Heavy Metals. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has omitted from the Products' labeling the fact that they contain (or risk containing) Heavy Metals.

58.    **WHEN**: Defendant omitted from the Products' labeling the fact that the Products contain (or risk containing) significant amounts of unsafe Heavy Metals, continuously throughout the applicable relevant periods, including at the point of sale.

59.   **WHERE**: Defendant's omissions were made on the front labeling and packaging of the Products and were thus viewed by every purchaser, including Plaintiffs, at the point of sale in every transaction. The Products are sold in brick-and-mortar stores and online stores nationwide.

60.   **HOW**: Defendant omitted from the Products' labeling the fact that they contain (or risk containing) Heavy Metals. And as discussed in detail throughout this Complaint, Plaintiffs and Class members read and relied on Defendant's front-label omissions before purchasing the Products.

61.   **WHY**: Defendant omitted from the Products' labeling the fact that they contain (or risk containing) Heavy Metals for the express purpose of inducing Plaintiffs and Class members to purchase the Products at a substantial price premium or more than they would have paid had they known the truth about the Products.  As such, Defendant profited by selling the Products to at least thousands of consumers throughout the nation, including Plaintiffs and the Class members.

## CLASS ACTION ALLEGATIONS

62.   Plaintiffs brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiffs brings this action and seek certification of the following proposed classes (collectively, the Classes):

> **Class**: All persons within the United States who purchased the Products from the beginning of any applicable limitations period through the date of judgment.

63.   Plaintiff Gralia also brings this action on behalf of the following Subclass.

> **New York Subclass**: All persons who purchased the Products in the State of California from the beginning of any applicable limitations period through the date of judgment (the "New York Subclass").

64.     Plaintiffs Harkavy, Sherman, and Rodriguez also bring this action on behalf of the following Subclass.

> **California Subclass**: All persons who purchased the Products in the State of California from the beginning of any applicable limitations period through the date of judgment (the "California Subclass").

65.     Excluded from the proposed Classes are the Defendant, and any entities in which the Defendant has controlling interest, the Defendant's agents, employees and its legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and all resellers of the Products.

66.     Plaintiffs reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

67.     Plaintiffs further reserves the right to amend the above class definition as appropriate after further investigation and discovery, including by seeking to certify a narrower multi-state class (or classes) in lieu of a nationwide class if appropriate.

68.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** At this time, Plaintiffs does not know the exact number of members of the Classes; however, given the nature of the claims and the number of retail stores in the United States selling the Products, Plaintiffs believes that the Class members are so numerous that joinder of all members is impracticable. While the exact number of Class members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class members. Moreover, the number of members of the Classes may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by mail and/or electronic mail or other appropriate digital means, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

69.    **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual Class members include:

(a)    whether the Products contain toxic Heavy Metals;

(b)    whether Defendant's conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

(c)    whether the amount of toxic Heavy Metals in the Products is material to a reasonable consumer;

(d)    whether Defendant had a duty to disclose that its Products had toxic Heavy Metals;

(e)    whether Plaintiffs and members of the Classes are entitled to injunctive and other equitable relief;

(f)    whether Defendant failed to disclose material facts concerning the Products;

(g)    whether Defendant's conduct was unfair and/or deceptive;

(h)    whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Class members;

(i)    whether Defendant violated California consumer protection and deceptive practice statutes and are entitled to restitution and/or damages under such state statutes; and

(j)     whether Plaintiffs and the Class members have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

70.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of those of the Class members because Plaintiffs, like other Class members, purchased, in a typical consumer setting, the Products and Plaintiffs sustained damages from Defendant's wrongful conduct.

71.     **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs will fairly and adequately protect the interests of the Class members and have retained counsel that is experienced in litigating complex class actions.  Plaintiffs has no interests which conflict with those of the Classes.

72.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Plaintiffs and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

73.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiffs seeks to certify the Classes to enjoin Defendant from selling or otherwise distributing the Products

until such time that Defendant can demonstrate to the Court's satisfaction that the Products are accurately labeled. The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate equitable relief with respect to the Classes as a whole.

74.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

(a)    The damages suffered by each individual members of the putative Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

(b)    Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

(c)    The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

(d)    Individual joinder of all members of the Classes is impracticable;

(e)    Absent a Class, Plaintiffs and members of the putative Classes will continue to suffer harm as a result of Defendant's unlawful conduct; and

(f)    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and members of the putative Classes can seek redress for the harm caused by Defendant.

(g)    In the alternative, the Classes may be certified for the following reasons:

(i)    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant;

(ii)    Adjudications of claims of the individual members of the Classes against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class members to protect their interests; and

(iii)    Defendant has acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

## CAUSES OF ACTION

### FIRST COUNT
**Unjust Enrichment**

75.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

76.    Plaintiffs bring this claim individually and on behalf of the members of the Classes under the laws of New York and California.

77.    Plaintiffs and the Class members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

78.    Defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiffs and the Class members.

79.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and the Class members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Products contained (or risked containing) toxic Heavy Metals.  This caused injuries to Plaintiffs and members of the Classes because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

80.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products to Plaintiffs and the Class members.

81.    Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

82.    Plaintiffs and the Class members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

83.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class members have suffered in an amount to be proven at trial.

84.    Here, equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product.  Without compensation for the full premium price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

85.    Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Product so that Plaintiffs and Class members can reasonably rely on Defendant's packaging as well as those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

86.    Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price will ensure that Plaintiffs is in the same place they would have been in had Defendant's wrongful conduct not occurred, i.e., in the position to make an informed decision about the purchase of the Products absent omissions with the full purchase price at their disposal.

## SECOND COUNT
### Violation Of New York's General Business Law § 349

87.    Plaintiff Luke Gralia hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

88.    Plaintiff Gralia brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

89.    Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the presence (or potential presence) of toxic heavy metals in its Products.

90.    Information as to the heavy metal content of each of its dark chocolate Products was in Defendant's exclusive control.  Plaintiff Gralia could not possibly have known that the Products at issue contained toxic Heavy Metals because such information was not available to the public until late 2022.

91.    Plaintiff has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff Gralia repeatedly purchased both of Defendant's Products.  In doing so, Plaintiff Gralia relied upon Defendants' false, misleading, and deceptive representations that the Products were fit for human consumption and did not contain significantly elevated concentrations of lead or cadmium.  Plaintiff Millman spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's Products.

92.     Defendant's deceptive acts and practices were directed at consumers.

93.     Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendant knew consumers would purchase its Products and/or pay more for them under the false – but reasonable – belief that they were safe to consume regularly and did not contain significantly elevated levels of toxic Heavy Metals.

94.     Defendant knows that health information about its food products is material to consumers.  As a result of its deceptive acts and practices, Defendant sold tens if not hundreds of thousands of dark chocolate Products to unsuspecting consumers across New York.

95.     If Defendant had advertised the Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased them or would not have paid as much as they did for them.

96.     As a direct and proximate result of Defendants' false, misleading, and deceptive representations and/or omissions, Plaintiff Gralia and other Members of the New York Subclass were injured in that they: (1) paid money for dark chocolate Products that were not what Defendants represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the dark chocolate Products they purchased had less value than if Defendant had adequately disclosed the presence of heavy metals in them.

97.     On behalf of herself and Members of the New York Subclass, Plaintiff Gralia seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## THIRD COUNT
### Violation Of New York's General Business Law § 350

98.     Plaintiff Luke Gralia hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

99.     Plaintiff Gralia brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

100.    Defendant engaged in a campaign of false advertising with regard to the safety and heavy metal content of its dark chocolate Products to mislead consumers into believing that the Products were safe for human consumption and did not contain high levels of heavy metals, namely lead and cadmium.

101.    Plaintiff has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff Gralia repeatedly purchased both of Defendant's Products.  In doing so, Plaintiff Gralia relied upon Defendants' false, misleading, and deceptive representations that the Products were fit for human consumption and did not contain significantly elevated concentrations of lead or cadmium.  Plaintiff Gralia spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's Products.

102.    Defendant's deceptive acts and practices were directed at consumers.

103.    Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendant knew consumers would purchase its Products and/or pay more for them under the false – but reasonable – belief that they were safe to consume regularly and did not contain significantly elevated levels of toxic Heavy Metals.

104.    Defendant knows that health information about its food products is material to consumers.  As a result of its deceptive acts and practices, Defendant sold tens if not hundreds of thousands of dark chocolate Products to unsuspecting consumers across New York.

105.    If Defendant had advertised the Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased them or would not have paid as much as they did for them.

106.    As a direct and proximate result of Defendants' false, misleading, and deceptive representations and/or omissions, Plaintiff Gralia and other Members of the New York Subclass were injured in that they: (1) paid money for dark chocolate Products that were not what Defendants represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the dark chocolate Products they purchased had less value than if Defendant had adequately disclosed the presence of heavy metals in them.

107.    On behalf of herself and Members of the New York Subclass, Plaintiff Gralia seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

### FOURTH COUNT
**Violation Of California's Unfair Competition Law ("Ucl")**
**Cal. Bus. & Prof. Code § 17200 *Et Seq.*,**

108.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

109.    Plaintiffs Harkavy, Sherman, and Rodriguez bring this claim individually and on behalf of the California Subclass members.

110.    The UCL broadly prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

111.    Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq.* This conduct includes but is not limited to its failure to disclose that the Products contain (or risk containing) toxic Heavy Metals.

112.    Defendant has violated the UCL's proscription against engaging in **Fraudulent**

**Business Practices.**  After reviewing the packaging for the Products, Plaintiffs purchased the Products in reliance on Defendant's omissions.  Plaintiffs would not have purchased the Products at all or would have paid less for them if they had known of Defendant's omissions regarding that the Products contain (or risk containing) toxic Heavy Metals.  Plaintiffs and the California Subclass members have all paid money for the Products.  However, Plaintiffs and the California Subclass members did not obtain the full value or any value of the advertised products due to Defendant's omissions regarding the toxic Heavy Metals.  Accordingly, Plaintiffs and the California Subclass members have suffered injury in fact and lost money or property as a direct result of Defendant's omissions.

113.    Defendant has also violated the UCL's proscription against engaging in **Unlawful Business Practices** by, *inter alia*, making omissions of material facts, as set forth more fully herein, and violating Cal. Civ. Code § 1750 *et seq*. Plaintiffs purchased the Products in reliance on Defendant's omissions as to the toxic Heavy Metals contained therein (or the risk of same). Plaintiffs would not have purchased the Products at all or would have paid less for them had they known of Defendant's omissions.  Plaintiffs and the California Subclass members paid money for the Products.  However, Plaintiffs and the California Subclass members did not obtain the full value, or any value, of the advertised products due to Defendant's omissions regarding the Products.  Accordingly, Plaintiffs and the California Subclass members have suffered injury in fact and lost money or property as a direct result of Defendant's omissions.

114.    Defendant has further violated the UCL's proscription against engaging in **Unfair Business Practices**.  Under Business & Professions Code §17200, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

115.    Defendant has engaged, and continues to engage, in conduct which is immoral,

unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.  This conduct includes its failure to disclose that the Products contain (or risk containing) toxic Heavy Metals.

116.    Defendant's conduct is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have purchased the Products at all or would have paid less for them but for Defendant's omissions regarding the presence (or risk) of toxic Heavy Metals in the Products.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Defendant's conduct.  Since consumers reasonably rely on Defendant's labels, and thus also its omissions, consumers could not have reasonably avoided such injury.  *Davis v. Ford Motor Credit Co*., 179 Cal. App. 4th 581, 597-98 (2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act).

117.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

118.    Pursuant to California Business and Professional Code § 17203, Plaintiffs and the California Subclass members seek an order of this Court that includes, but is not limited to, an order requiring Defendant to (a) provide restitution to Plaintiffs and the other California Subclass members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiffs and the California Subclass members' attorneys' fees and costs.

119.    Here, equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product.  Without compensation for the full premium price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

120.    Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Product so that Plaintiffs and California Subclass members can reasonably rely on Defendant's packaging as well as those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

121.    Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, and an injunction requiring either (1) adequate disclosures of the existence of Heavy Metals in the Products; or (2) the removal of such Heavy Metals from the Products, will ensure that Plaintiffs is in the same place they would have been in had Defendant's wrongful conduct not occurred, i.e., in the position to make an informed decision about the purchase of the Products absent omissions with the full purchase price at their  disposal.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs  respectfully request that the Court grant Plaintiffs and all members of the proposed Classes the following relief against Defendant:

a.    That the Court certify the Classes under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiffs as Class Representatives and their attorneys as Class Counsel to represent the members of the Classes;

b.    That the Court declare that Defendant's conduct violates the statutes referenced herein;

c.    That the Court preliminarily and permanently enjoin Defendant from conducting business through the unlawful, unfair, or fraudulent business acts or practices, untrue, and misleading labeling and marketing and other violations of law described in this Complaint;

d.      That the Court order preliminary and injunctive relief requiring Defendant to disclose that the Products contain toxic Heavy Metals;

e.      That the Court order Defendant to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

f.      That the Court order Defendant to notify each and every individual who purchased the Products of the pendency of the claims in this action to give such individuals an opportunity to obtain restitution from Defendant;

g.      For an award of compensatory damages, the amount of which is to be determined at trial;

h.      For punitive damages;

i.      That the Court grant Plaintiffs' reasonable attorneys' fees and costs of suit; and

j.      That the Court grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury of any and all issues in this action so triable of right.

Dated: February 13, 2023                Respectfully submitted,

                                        **BURSOR & FISHER, P.A.**

                                        By:    _/s/ Max S. Roberts_
                                               Max S. Roberts

                                        Max S. Roberts
                                        888 Seventh Avenue
                                        New York, NY  10019
                                        Telephone: (646) 837-7150
                                        Facsimile:  (212) 989-9163
                                        Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher*
Sean L. Litteral*
Luke W. Sironski-White*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  ltfisher@bursor.com
            slitteral@bursor.com
            lsironski@bursor.com

**LAUKAITIS LAW FIRM LLC**
Kevin Laukaitis*
737 Bainbridge Street, #155
Philadelphia, PA 19147
Phone: (215) 789-4462
Email: klaukaitis@laukaitislaw.com

**FITZGERALD JOSEPH LLP**
Jack Fitzgerald
jack@fitzgeraldjoseph.com
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741

*Attorneys for Plaintiffs*

*\*Pro Hac Vice Forthcoming*